## JAMES D. ROBINSON *v.* STATE OF MARYLAND

[No. 1016, September Term, 1978.]

*Decided June 8, 1979.*

The cause was argued before MORTON, MOORE and COUCH, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *R. David Fordham, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

James D. Robinson, appellant, was convicted in a non-jury

trial in the Circuit Court for Anne Arundel County of the crime of escape (Md. Code, art. 27, § 139) and sentenced to the Division of Correction for a term of eight months to be served consecutively to any sentence he was then serving.

In this appeal appellant contends that "[t]he trial judge erred in refusing to consider Appellant's defense of compulsion to the crime of escape."

The record indicates that on May 13, 1978, appellant was incarcerated at the Maryland Correctional Camp Center in Jessup, Anne Arundel County, Maryland, and about 9:45 p.m. on that date he departed from the premises without permission. On May 30, 1978, appellant "turned himself in" to the police authorities of Baltimore City. At trial, appellant testified that while a member of the Maryland Penitentiary population, he "helped some officials out" as a result of which he was "jumped on" by several of his fellow inmates. He was then transferred to the Maryland House of Correction where he was placed "on protective custody status." Sometime later he was sent to the Maryland Correctional Camp Center. According to appellant, "[w]hen I went to the Camp Center I had trouble with three inmates and I got cut in the back over there the night that I left and that's the reason why I left."

Prior to the assault he had complained to a correctional officer of his fear of attacks by certain fellow inmates and was told "if you can't handle the Camp Center we'll send you back to the Maryland House of Correction." About an hour later he "was called into the bathroom and jumped on by the three inmates and cut on my back." When questioned about his actual escape, he said: "I knew exactly what I was facing, but instead of staying there and getting stabbed or going to sleep and getting stabbed, I left." When asked: "So, in other words, what you're saying is that you left out of fear for your life?," appellant replied: "Yes sir."

At the conclusion of the testimony trial counsel for appellant argued, as his appellate counsel does in this Court, that appellant's escape was excused because he "acted under

a compelling force of coercion or duress." In response to counsel's argument, the trial judge announced:

"It may well be that some day some Court will structure certain guidelines for determining . . . just how coercion or duress is to be measured insofar as inmates' escapes are concerned, but I am certainly not going to undertake to structure such guidelines. . . . I am not aware of any principle that there can be justification or excuse as such, a justification which would excuse the act so to speak from being a violation of the statutory crime of escape."

We agree with appellant that the trial judge erred in refusing to pass upon the appellant's defense of coercion, compulsion, duress or necessity. Counsel for both appellant and the State agree that for the purposes of this case. the terms may be treated interchangeably, although some authorities have sought to make a distinction among the terms. *Stewart v. United States,* 370 A. 2d 1374 (D.C. Ct. App. 1977); 43 U. Cin. L. Rev., 956-60 (1974).

While it would appear that our Maryland appellate courts have not addressed the applicability of such a defense specifically to the crime of escape, this Court did say, in *Frasher v. State,* 8 Md. App. 439, 447-48 (1970):

"It is essential to a crime that the defendant committed a voluntary act. . . . The voluntary requirement of the criminal act relates directly to compulsion; it is a defense as to all crimes except taking the life of an innocent person that the defendant acted under a compelling force of coercion or duress. 1 *Wharton's Criminal Law* (Anderson) § 123, p. 261. The compulsion may be by necessity, that is duress arising from circumstances, or by the application of duress on the defendant by another person."

Counsel for appellant asserts that "[s]everal jurisdictions have recently shed a traditional reluctance to apply this defense to a charge of escape" and counsel for the State

"concedes that there is a trend to recognize the defense"[1] and urges us "to recognize the defense in a proper setting," asserting that this case does not constitute such a setting.

Both sides recommend that we adopt the guidelines set forth in what they term the leading case of *People v. Lovercamp*, 43 Cal. App. 3d 823, 69 ALR 3d 668 (1975). There the court observed:

> "[R]ather early in the legal history of the offense of escape, it became clear that all departures from lawful custody were not necessarily escapes or, to put it more accurately, there was a possible defense to an escape charge, to wit, necessity. In 1 Hale P.C. 611 (1736), it was written that if a prison caught fire and a prisoner departed to save his life, the necessity to save his life 'excuseth the felony.' So, too, we may assume that a prisoner with his back to the wall, facing a gang of fellow inmates approaching him with drawn knives, who are making it very clear that they intend to kill him, might be expected to go over the wall rather than remain and be a martyr to the principle of prison discipline."

The facts in *Lovercamp*, as delineated in the opinion of the court, were as follows: Two women inmates of the California Rehabilitation Center "had been in the institution about two and one-half months and during that time they had been threatened continuously by a group of lesbian inmates who told them they were to perform lesbian acts — the exact expression was 'fuck or fight.' They complained to the authorities several times but nothing was done about their complaints. On the day of the escape, 10 or 15 of these lesbian inmates approached them and again offered them the alternative 'fuck or fight.' This time there was a fight, the results of which were not outlined in the offer of proof. After the fight Ms. Wynashe [co-defendant] and defendant were

---

1. Appellant is correct in his contention that "several jurisdictions" have recently recognized the necessity defense in escape cases. *See, e.g.,* People v. Hocquard, 236 N.W.2d 72 (Mich. 1975), People v. Davis, 306 N.E.2d 897 (Ill. 1974), and Roy v. Commonwealth, 500 S.W.2d 921 (Ky. 1973). *See also* Annot., Duress, Necessity, or Conditions of Confinement as Justification for Escape From Prison, 69 ALR 3d 678.

told by this group of lesbians that they 'would see the group again.' " The women thereupon departed from the center and "were promptly captured in a hayfield a few yards away."

At trial Ms. Lovercamp's offer to prove the facts surrounding the leave-taking of the institution by her and her fellow inmate was refused by the trial judge and they were convicted of escape. In reversing the conviction, the California appellate court announced:

> "While we conclude that under certain circumstances a defense of necessity may be proven by the defendant, at the same time we place rigid limitations on the viability of the defense in order to insure that the rights and interests of society will not be impinged upon. We have not formulated a new rule of law but rather have applied rules long ago established in a manner which effects fundamental justice."

The court then went on to hold that a limited defense of necessity is available to an individual charged with the crime of escape if the following conditions exist:

> "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;
> (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which makes any result from such complaints illusory;
> (3) There is no time or opportunity to resort to the courts;
> (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and
> (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."

We think these guidelines represent a sound and reasonable approach to the problems arising in our prison

institutions which may occasionally force upon a member of the prison population a choice between escaping or subjecting himself to death or serious bodily harm. A person charged with the crime of escape should have available to him the defense of necessity or compulsion if he can demonstrate to the satisfaction of the judge or jury that the facts surrounding his escape fall *strictly* within the guidelines set out above in *Lovercamp*.[2]

The attorney general's representative, while agreeing that the rule of *Lovercamp* should be adopted by the courts of this State, urges that the record before us facially demonstrates that the appellant has failed to satisfy the conditions of *Lovercamp*. While suggesting that appellant probably failed to meet conditions (1) and (2), it is vigorously argued that appellant remained free from custody for a period of some 17 days and that this conduct in itself manifestly constitutes a failure to comply with guideline (5) which requires that a prisoner immediately report to the proper authority when he has attained a position of safety from the immediate threat.

While this argument may or may not have some validity, the record before us is clear that the trial judge refused to recognize the defense of necessity or compulsion. We think the appellant was entitled to have the trial judge pass upon the facts developed in support of such a defense.

Accordingly, we shall reverse the conviction and remand the case for a new trial to enable the trial judge to review the evidence in light of the guidelines set forth herein.[3]

> *Judgment reversed; case remanded*
> *for a new trial; costs to be paid by*
> *Anne Arundel County.*

---

2. We do not agree with the holding of the court in People v. Unger, 362 N.E.2d 319 (Ill. 1977), that "the absence of one of the Lovercamp preconditions does not alone disprove the claim of necessity and should not therefore automatically preclude an instruction on the defense." The defense, in our opinion, must generate factual compliance with each of the five guidelines where applicable.

3. The briefs submitted by counsel for appellant and the State were of high caliber and their oral arguments most helpful to the Court.