**Jeffery WELLS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. 7479, 7663.**

Court of Appeals of Alaska.

Sept. 7, 1984.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

After a trial in Anchorage, Jeffery Wells was convicted of escape in the second degree. AS 11.56.310(a)(1)(A). He had been serving a two-year presumptive sentence at the Palmer Correctional Center following a Juneau conviction for fraudulent use of a credit card. AS 11.46.285. In 1979 Wells had been convicted of burglary in Oregon. Judge Pegues treated Wells' burglary as a prior felony and therefore imposed a presumptive sentence for the fraudulent use of a credit card conviction. Judge Moore agreed with Judge Pegues' decision and consequently treated Wells as a third felony offender for purposes of his escape sentence. Wells raises three contentions on appeal. First, Wells argues that the trial court erred in rejecting his "necessity defense" to the escape charge. Second, Wells contends that the sentencing courts erred in treating his Oregon conviction as a prior felony conviction and sentencing him, respectively, as a second felony offender for the fraudulent use of a credit card conviction and a third felony offender for the escape conviction. Finally, Wells contends that his sentence for escape is excessive. We affirm.

## FACTS

Prior to trial Wells gave notice of his intent to rely on a necessity defense and submitted proposed jury instructions. He contended that he escaped because his life had been threatened by some fellow inmates who were angry with him because he disclosed their plan to steal marijuana from another inmate. In addition, he stated that he was not receiving adequate medical care and had been unable to obtain psychological counseling to help him deal with a drug problem that had resulted from complications following surgery on his ankle.[1]

In response, the state asked the trial court to apply the test set forth in *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal. Rptr. 110 (1974), which restricts the necessity defense in cases of prison escape.[2]

---

**1.** Wells left a note behind explaining the reasons for his departure; it made no mention of any threats of violence:

> Dear Palmer Correctional Center,
>   I am leaving because I can no longer handle dealing with my medical problems. They have just become too much for me to handle. I don't know if I am doing the right thing, but I can no longer deal with the problem myself. I'm very sorry for me and for what I'm about to do.
>
>                         Jeff D. Wells
>                         6/22/82

At the time of his arrest, Wells was in a bar reportedly making phone calls to set up an appointment with a doctor. He was apparently having difficulty doing so, however, because the doctors wanted to see his medical records which he could not provide without revealing that he had been in prison. Wells admitted that he did not want to provide that information because, if he did, he would have to go back to jail. As to the threats on his life, Wells testified that he was told that "sometime in the future" he would get "shanked" (stabbed) but admitted that he had never been attacked and did not report the threats.

**2.** In *Lovercamp,* the court held that a "limited defense of necessity" is available in escape cases if the following conditions exist:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;
(2) There is no time for complaint to the authorities or there exists a history of futile

Judge Moore ruled that the *Lovercamp* conditions reflected the common law and should be followed in Alaska. After hearing Wells' offer of proof, the trial court ruled as a matter of law that it was insufficient to meet the fifth *Lovercamp* condition. Consequently, the trial court did not instruct the jury on necessity as a defense.[3] As a result of this ruling, Wells stipulated to a nonjury trial and was found guilty.

At sentencing, Judge Moore treated Wells as a third felony offender based on his 1982 Juneau credit card conviction and his 1979 Oregon burglary conviction. Wells argued that his Oregon conviction was not "a prior felony conviction" because it had been treated by the Oregon court as a misdemeanor for sentencing purposes pursuant to an Oregon statute which allows a sentencing judge to treat any class C felony offense as a misdemeanor at sentencing. *See* ORS 161.705. Judge Moore ruled that the Oregon conviction would be considered a prior felony conviction under AS 12.55.145(a)(2) because the elements of burglary in the second degree in Oregon are virtually identical to the elements of burglary in the second degree in Alaska. *Compare* ORS 164.215 *with* AS 11.46.310. After finding that two of three alleged mitigating factors had been established, the trial court imposed a sentence of five years, one year less than the presumptive term.

## DISCUSSION

### NECESSITY AS A DEFENSE TO ESCAPE IN ALASKA

Alaska Statute 11.81.320 provides:

*Justification: Necessity.* (a) Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when

(1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and

(2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.

(b) The justification specified in (a) of this section is an affirmative defense.

The reference in AS 11.81.320 to the "common law" makes it *in pari materia* to AS 01.10.010 which provides:

So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

Wells argues that the term "common law" is restricted to traditional law as it developed at some time in the past. Thus, he contends the common law did not require a defendant who relies on a necessity defense to an escape charge to prove that he terminated his escape at the earliest time at which he could safely do so. We reject Wells' attempt to restrict the term "common law." In *Howarth v. Pfeifer*, 443 P.2d 39, 44 (Alaska 1968), the supreme court rejected a restrictive definition of the phrase "common law." The court explained that the common law is dynamic, not static; it is not limited to the state of the law at any particular time in the past but rather it reflects the evolution of law through court decisions. *See also Surina v. Buckalew*, 629 P.2d 969, 973 (Alaska 1981) (in the absence of statute, it is the appellate court's duty to explicate the com-

---

complaints which make any result from such complaints illusory;

(3) There is not time or opportunity to resort to the court;

(4) There is not evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

118 Cal.Rptr. at 115.

**3.** The state asks us to adopt the *Lovercamp* criteria *in toto*. We decline the invitation because we find that Wells failed to prove a bonafide effort to return to custody. We are not called upon to decide the relevancy of the other factors enumerated in *Lovercamp*. Accordingly, we leave that determination to future cases.

mon law which will apply unless and until the Alaska legislature acts to modify it).

It is clear from the legislative history of AS 11.81.320 that the legislature used the phrase "common law" to give the courts the power to define the specifics of the defense of necessity in Alaska. As the authors of the tentative draft pointed out:

The most important issues regarding the necessity defense are whether it should be codified, and, if so, with what degree of detail. *See* [Tiffany and Anderson, *Legislating the Necessity Defense in Criminal Law,* 52 Den.L.J. 839, 874 (1975)].

While most revised codes have codified the defense [*see,* ORS 161.200, N.Y.Penal Law § 35.05(2)] the Subcommission followed the New Jersey approach by declining to adopt a detailed statutory formulation. Instead, the necessity defense was incorporated into the Revised Code "to the extent permitted by common law" with the qualifications described in subsections (1) and (2).

The Subcommission concluded, as did the Commentary to the New Jersey code, that "it is more appropriate to leave this issue to the judiciary ... the rarity of the defense and the imponderables of the particulars of specific cases convinces us that the courts can better define and apply this defense than can be done through legislation." [Quoting 52 Den. L.J. at 874–75, quoting in turn New Jersey Criminal Law Revision Comm'n, Vol. 2: Commentary, § 2C:3–2 (Final Report 1971)].

Alaska Criminal Code Revision Part II, at 48–49 (Tent.Draft 1977).

The trial court sought to carry out this legislative direction by adopting the *Lovercamp* criteria.

There is a split of authority among those jurisdictions considering the question whether a defendant must present some evidence that he sought to surrender to the authorities after escaping before he may present a necessity defense to the jury. A majority of the courts require such a showing. *See United States v. Bailey,* 444 U.S.

·394, 412–13, 100 S.Ct. 624, 635–36, 62 L.Ed.2d 575, 591–92 (1980); *People v. McKnight,* 626 P.2d 678, 681 (Colo.1981); *Johnson v. State,* 379 A.2d 1129, 1131–32 (Del.1977); *Holdren v. State,* 415 So.2d 39, 41 (Fla.App.1982); *State v. Horn,* 58 Hawaii 252, 566 P.2d 1378, 1381 (1977); *State v. Urquhart,* 105 Idaho 92, 665 P.2d 1102, 1106 (App.1983); *State v. Reese,* 272 N.W.2d 863, 867 (Iowa 1978); *State v. Boleyn,* 328 So.2d 95, 97 (La.1976); *Robinson v. State,* 42 Md.App. 617, 402 A.2d 115, 117 (1979); *State v. Watts,* 60 N.C.App. 191, 298 S.E.2d 436, 437 (1982); *State v. Cross,* 58 Ohio St.2d 482, 391 N.E.2d 319, 322 (1979); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583, 589 (1982); *State v. Worley,* 265 S.C. 551, 220 S.E.2d 242, 243 (1975); *State v. Niemczyk,* 31 Wash.App. 803, 644 P.2d 759, 762 (1982). *See generally* Annot., 69 A.L.R.3d 678, 688–89 (1976 & Supp.1983).

A minority rule treats the *Lovercamp* conditions as relevant for jury consideration regarding the credibility of the defendant's claim that he escaped out of necessity, but not as essential conditions which must be satisfied in order to assert the defense. *See People v. Unger,* 66 Ill.2d 333, 5 Ill.Dec. 848, 852, 362 N.E.2d 319, 323 (Ill.1977); *Commonwealth v. O'Malley,* 14 Mass.App. 314, 439 N.E.2d 832, 836, *review denied,* 440 N.E.2d 1177 (Mass.1982); *People v. Luther,* 394 Mich. 619, 232 N.W.2d 184, 187 (1975); *Esquibel v. State,* 91 N.M. 498, 576 P.2d 1129, 1132 (1978). *See also State v. Baker,* 598 S.W.2d 540, 546 (Mo. App.1980). *But see State v. Daniels,* 641 S.W.2d 488 (Mo.App.1982).

We have carefully reviewed the parties' arguments and the reasoning of the various decisions which have addressed the significance of evidence of the defendant's voluntary return to custody following an escape. It appears that the various approaches depend upon differing interpretations of the local escape statutes rather than disagreements about the necessity defense. Those courts that consider escape a continuing offense require a defendant asserting necessity to offer some evidence

that he sought to turn himself in or avail himself of legal remedies once he was free of the institution and the immediate threat upon which his defense of necessity is based. In contrast, those courts which consider the crime of escape to be complete at the time the defendant removed himself from custody, view his subsequent actions as a reflection on his credibility in initially asserting the necessity defense. *Compare United States v. Bailey,* 444 U.S. 394, 412–14, 100 S.Ct. 624, 635–36, 62 L.Ed.2d 575, 592–93 (1980) (holding escape to be a "continuing offense" and requiring a defendant asserting necessity to offer evidence justifying his continued absence from custody as well as his initial departure, *i.e.,* testimony of bona fide efforts to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force) *with People v. Mendoza,* 108 Mich. App. 733, 310 N.W.2d 860, 863–64 (1981) (escape is complete at the time the escape from prison is made; evidence of an escapee's actions after the crime is complete are relevant only to determine his state of mind at the time of escape).

We are satisfied that escape is a continuing offense under Alaska law. We find the following language from the United States Supreme Court instructive:

First, we think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure. Given the continuing threat to society posed by an escaped prisoner, "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858 [860], 25 L.Ed.2d 156 (1970). Moreover, every federal court that has considered this issue has held, either explicitly or implicitly, that § 751(a) defines a continuing offense. [Citations omitted].

*United States v. Bailey,* 444 U.S. at 414, 100 S.Ct. at 636, 62 L.Ed.2d at 592.

Alaska courts have long recognized that a major risk generated by an escape is potential harm caused by the escapee while at large. *See, e.g., Alex v. State,* 484 P.2d 677, 685 (Alaska 1971). In *Alex,* the court rejected an equal protection challenge to the statutory scheme imposing greater penalties on felons who escape than on misdemeanants. The court said: "The legislature could reasonably have believed that persons convicted of felonies which are generally more serious crimes than misdemeanors, present a greater threat to the public. Thus, a greater effort to deter their escape may reasonably be made." *Id. See also* AS 11.56.310(a)(1)(C), (2) (imposing additional penalties where one evading custody possesses on or about his person a firearm).

■ We therefore conclude that escape under Alaska law is a continuing offense. A defendant relying on necessity to justify an escape must present some evidence justifying his continued absence from custody as well as his initial departure.

While acknowledging that the evidence suggesting his intent to return to custody was very weak, Wells nevertheless argues that it was sufficient to require an instruction on necessity. In *Nathaniel v. State,* 668 P.2d 851 (Alaska App.1983), we said:

In order to satisfy the "some evidence" test [which establishes a defendant's right to an instruction on a defense], it is not necessary that the defendant testify or even offer direct evidence in his own behalf. Some evidence establishing a dispute as to a factual issue may arise from a weakness in the prosecution's evidence or from impeachment of its witnesses. Similarly, circumstantial evidence presented as part of the state's case-in-chief may give rise to some evidence of a disputed fact.

668 P.2d at 855 (citations omitted).

■ Wells based his claim of necessity on two distinct types of evidence. First, he contended that the state had failed both to provide him with adequate medical attention and to meet his need for psychological counseling. We hold that this evidence

was insufficient as a matter of law to raise a necessity defense.[4] Alternatively, Wells contended that he was faced with an immediate threat of physical injury by a gang of fellow prisoners outraged that he had warned another inmate of the gang's intent to highjack some marijuana. The trial court held, and we agree, that this evidence would have been sufficient to inject the issue of necessity into the case if there had been some evidence suggesting that Wells tried unsuccessfully to obtain protection within the institution and that he either (1) turned himself in after obtaining his freedom, or (2) could justify his continuing absence. Apparently, Wells was arrested while in a bar phoning doctors seeking a medical appointment. The state points out correctly that Wells testified that he had difficulty finding a physician because the physicians wanted medical records which would have identified Wells as a prisoner and resulted in his being returned to custody. In the absence of any evidence explaining that Wells' continued absence resulted from duress, or otherwise justifying Wells' continuing absence, we hold that the trial court did not err in refusing to instruct the jury on the defense of necessity.

## SENTENCING ISSUES

■ Wells argues that Judge Pegues' decision to treat him as a second felony offender and Judge Moore's decision to treat him as a third felony offender were based upon the erroneous conclusions that his Oregon conviction was a prior felony.

Former Alaska Statute 12.55.145(a)(2) provides:

> *Prior Convictions.* (a) For purposes of considering prior convictions and imposing sentence under this chapter
>
> . . . .
>
> (2) a conviction in this or another jurisdiction of an offense having elements substantially identical to those of a felony defined as such under Alaska law is considered a prior felony conviction.

In 1979 Wells was convicted of the crime of burglary in the second degree in Oregon. ORS 164.215 provided:

> (1) A person commits the crime of burglary in the second degree if he enters or remains in a building with intent to commit a crime therein.
>
> (2) Burglary in the second degree is a class C felony.

The comparable Alaska provision, AS 11.-46.310, provides:

> (1) A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime in the building.
>
> (2) Burglary in the second degree is a class C felony.

The Alaska statute is based upon tentative draft section 11.46.310. The commentary to the tentative draft establishes that the Alaska statute was based upon the Oregon statute. Alaska Criminal Code Revision Part III at 102 (Tent.Draft 1977) (Appendix I). It is therefore clear that the elements of the Alaska statute are substantially identical to the elements of the Oregon statute.

Wells argues, however, that his conviction should not have been treated as a prior felony because he was sentenced under ORS 161.705 which provides:

> *Reduction of Certain Felonies to Misdemeanors.* (1) Notwithstanding ORS 161.525, the court may enter judgment of conviction for a class A misdemeanor and make disposition accordingly when: (a) a person is convicted of a class C felony.

Wells argues that pursuant to this statute his felony conviction was reduced to a misdemeanor conviction and therefore cannot constitute a "prior felony" under Alaska law. We disagree. We have consistently interpreted AS 12.55.145(a)(2) to apply to the statute establishing the elements of the offense for which the defendant was previously convicted. That statute was ORS 164.215 which is a class C felony in Oregon as it is in Alaska. It is clear that under

---

**4.** Since Wells' alleged medical needs would not justify his initial departure, his subsequent attempts to address his medical needs could not justify his continuing absence from custody.

Oregon law, before a defendant may benefit from ORS 161.705, he must be convicted of a class C felony. Under these circumstances, Judge Pegues and Judge Moore did not err in concluding that Wells was, respectively, a second and third felony offender under Alaska law.[5]

Wells' reliance on *McManners v. State*, 650 P.2d 414 (Alaska App.1982), is misplaced. In that case we held that AS 12.-55.145(a)(2) required us to compare the elements of the offense under which a defendant was previously convicted with current law. McManners was convicted of a substantially identical offense under Missouri law and consequently qualified as a prior felony offender. He argued, however, that at the time of his Missouri conviction he would have been a juvenile under Alaska law and therefore subject to juvenile jurisdiction. We concluded that a person's age, which determines whether he would have been subject to juvenile or adult prosecution in Alaska, was not an element of an offense within the meaning of AS 12.55.-145(a)(2). We went on to explain why disregarding a person's age at the time of his conviction was consonant with the public

policy underlying the sentencing statute. We believe those policies are satisfied by Wells' convictions. Wells was clearly convicted as an adult. He was given the benefit of a lenient sentence in the hope that it would aid in his reformation and rehabilitation. Evidently, that hope was not fulfilled. It is not unreasonable to recognize Wells' Oregon conviction as a felony at this time for purposes of presumptive sentencing. *See Shaw v. State*, 673 P.2d 781 (Alaska App.1983) (person who received suspended imposition of sentence which has not been set aside, has been convicted of prior felony for purposes of presumptive sentencing).

Finally, we are satisfied that Wells' escape sentence is not clearly mistaken. *See Juneby v. State*, 641 P.2d 823, 835 (Alaska App.1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983). Judge Moore found that two mitigators had been properly established: former AS 12.55.-155(d)(8) (prior convictions less serious);[6] and AS 12.55.155(d)(3) (crime committed under some degree of duress not constituting a complete defense). Judge Moore then evaluated the facts of this case in light of

---

**5.** Judge Coats would read AS 12.55.145(a)(2) literally so that conviction of any offense, whether classified as a misdemeanor or a felony in another jurisdiction, which had elements substantially identical to those of a felony defined as such under Alaska law, would qualify as a prior felony conviction. Judge Coats' view finds support in *People v. Evans*, 20 App.Div.2d 671, 246 N.Y.S.2d 953 (N.Y.App.1964) (defendant properly sentenced as second felony offender in New York based on Pennsylvania misdemeanor conviction that would have been a felony if committed in New York). Since we are satisfied that Wells was convicted of a felony in Oregon, even though he was sentenced as a misdemeanant, it is not necessary to reach this question.

**6.** The authors of the tentative draft would have limited presumptive sentencing to those who had previously been convicted of a felony of equal or greater seriousness. *State v. Rastopsoff*, 659 P.2d 630, 639 (Alaska App.1983). They reasoned that conviction of an equal or more serious offense, and implicitly the resulting punishment imposed, would more likely alert the defendant to the seriousness of his conduct and

the need to reform than would conviction of a less serious offense. 659 P.2d at 640. The legislature made presumptive sentencing applicable to those convicted of any prior felony but accepted the tentative draft's reasoning in part by providing an aggravating factor when the defendant was previously convicted of a more serious offense, AS 12.55.155(c)(7), and a mitigating factor when the prior offense was less serious. Former AS 12.55.155(d)(8) (repealed). The mitigating factor is therefore most significant where the defendant was previously placed on straight probation or given a sentence of sixty days or less. *See Langton v. State*, 662 P.2d 954, 959 (Alaska App.1983) (sentence of sixty days or less equivalent to probationary sentence). In such a case the deterrent and rehabilitative effect of receiving a substantial sentence could not be determined. If Judge Moore had only Wells' Oregon "misdemeanor" conviction and sentence before him, the mitigating factor would have been very significant. Where a defendant has been previously convicted of two felonies, however, and is serving a substantial jail sentence at the time he commits his third felony, a trial court could properly find that the mitigating factor is of little significance.

those aggravators and concluded that, viewed in its entirety, the record warranted only reducing Wells' presumptive sentence from six to five years. Judge Moore specifically found that Wells was a poor rehabilitation risk and, after independently reviewing the trial record, concluded that Wells' necessity defense was extremely weak. The significance of the aggravating and mitigating factors was for the trial judge to determine. Judge Moore's decision was not clearly mistaken.

The judgment and sentence of the superior court are AFFIRMED.