IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-079

Filing Date: July 17, 2023

No. A-1-CA-39110

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

CHRISTOPHER CORY COBLE,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
Daniel A. Bryant, District Court Judge

Raúl Torrez, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

ATTREP, Chief Judge.

{1}     Defendant Christopher Coble appeals his conviction for escape from a community custody release program, contrary to NMSA 1978, Section 30-22-8.1(C) (1999). Defendant challenges the validity of the conviction, raising two claims of error relating to the jury instructions in this case. Defendant argues the jury should have been instructed on willfulness as an essential element of escape from a community custody release program. Because we conclude that willfulness is not an element of the charged offense, this claim of error fails. Defendant additionally asserts that his escape was occasioned by duress and that the absence of a duress instruction was the result of his trial counsel's ineffectiveness or, alternatively, amounted to fundamental error. Because

escape from a community custody release program is a continuing offense and any alleged duress subsided during the period of time Defendant was at large, Defendant was not entitled to a duress instruction. Thus, trial counsel did not render ineffective assistance by failing to request a duress instruction, nor did the district court commit fundamental error. We accordingly affirm.

**BACKGROUND**

**{2}** During the course of a separate criminal proceeding, Defendant's continued release from jail was conditioned on his enrollment in a community custody release program. As part of that program, Defendant was released into the custody of Bo Johnson, a former coworker of Defendant's father, and placed on electronic monitoring. Defendant was required to comply with terms outlined in both a court order releasing him to Mr. Johnson's custody and a contract between Defendant and his community custody release program officer, Officer Daniel Valdespino of the Otero County Detention Center. Those terms required Defendant to reside at the Johnson residence, where Mr. Johnson and his wife also lived. As part of the program, Defendant wore an electronic ankle monitor and was required to stay within a certain perimeter of the Johnson home, unless given permission by Officer Valdespino to be elsewhere.

**{3}** A couple of months after Defendant was released into Mr. Johnson's custody, Defendant and Mrs. Johnson confessed to Mr. Johnson that they were having an affair. Upset by the revelation, Mr. Johnson physically attacked Defendant. Defendant fought back, gained the upper hand, and then fled the Johnson residence. The electronic system connected to Defendant's ankle monitor alerted Officer Valdespino that Defendant had left the approved perimeter.

**{4}** Defendant never returned to the Johnson residence. Officer Valdespino went to the residence and otherwise tried to contact Defendant by phone, but failed to locate him. Several days after Defendant fled, he called Officer Valdespino, who told Defendant to return the ankle monitor and to "get with his attorney on this matter." An individual other than Defendant returned the ankle monitor to the detention center. Eighteen days after Defendant fled, Officer Valdespino filed a criminal complaint charging Defendant with escape from a community custody release program. Defendant was arrested approximately two weeks later—some thirty-four days after he had fled the Johnson residence. Ultimately, a jury found Defendant guilty as charged, and this appeal followed.

**DISCUSSION**

**{5}** Defendant argues that (1) willfulness is an essential element of escape from a community custody release program; and (2) he was entitled to a duress instruction. Defendant's arguments require us to construe the escape from a community custody release program statute, Section 30-22-8.1, and, to that extent, are reviewed de novo. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622 (providing that questions of statutory interpretation are reviewed de novo).

## I. Willfulness Is Not an Essential Element of Escape From a Community Custody Release Program

**{6}** We first address Defendant's argument that willfulness is an essential element of the crime of escape from a community custody release program, and that the district court erred in denying his request to instruct the jury accordingly. At the time of Defendant's trial, there was no uniform jury instruction defining the crime of escape from a community custody release program.[1] The district court therefore fashioned an instruction based on the relevant statute, Section 30-22-8.1. *See* UJI-Criminal General Use Note ("For a crime for which no uniform instruction on essential elements is provided, an appropriate instruction stating the essential elements must be drafted."); *State v. Luna*, 2018-NMCA-025, ¶ 21, 458 P.3d 457 (providing that "the district court was required to give an instruction that substantially follows the language of the statute" (alteration, internal quotation marks, and citation omitted)). Relying on the uniform jury instruction for escape from an inmate-release program, UJI 14-2228 NMRA (2022) (recompiled as UJI 14-2228A NMRA), Defendant requested the district court to include the following element related to mens rea: "The defendant's failure to return [to custody] was willful, without sufficient justification or excuse." *See* UJI 14-2228(4) (2022). The court declined to do so, and instructed the jury using the general criminal intent instruction alone, *see* UJI 14-141 NMRA.[2] On appeal, Defendant contends that it was error not to instruct the jury that it had to find he "acted willfully when he violated the conditions of the community custody [release] program."[3] We disagree.

**{7}** We review Defendant's claim for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("If the error has been preserved we review the instructions for reversible error."). Reversible error occurs if the jury was not instructed on all the elements essential to a defendant's conviction. *See State v. Ellis*, 2008-NMSC-032, ¶ 12, 144 N.M. 253, 186 P.3d 245. The question before us thus is whether willfulness is an essential element of escape from a community custody release program—a matter we review de novo. *See State v. Lefthand*, 2015-NMCA-117, ¶ 6,

---

[1]UJI 14-2228C NMRA, the instruction setting forth the essential elements of the crime, was not adopted until December 31, 2022.

[2]This Court has observed that "'[w]illfully' connotes an element of mens rea, but the Legislature's use of the word 'willfully' in [a] statute is not dispositive of either specific or general intent." *State v. Quintin C.*, 2019-NMCA-069, ¶ 11, 451 P.3d 901. Moreover, "'willfully' does not enjoy a universal definition in New Mexico." *Id.* One definition of "willful" recognized in our case law is essentially synonymous with the general intent jury instruction. *Compare, e.g.*, *State v. Elmquist*, 1992-NMCA-119, ¶ 3, 114 N.M. 551, 844 P.2d 131 ("The term 'willful' has been defined as requiring proof that the person acted intentionally in the sense that he was aware of what he was doing."), *with* UJI 14-141 ("A person acts intentionally when he purposely does an act which the law declares to be a crime."). Another defines "willful" as "the doing of an act without just cause or lawful excuse." *State v. Rosaire*, 1997-NMSC-034, ¶ 7, 123 N.M. 701, 945 P.2d 66 (internal quotation marks and citation omitted). Defendant relies on the latter definition in advancing his argument.

[3]We observe that the willfulness element proffered to the district court differs from the element Defendant now advances on appeal. Because we conclude willfulness is not an essential element of the charged offense, we simply assume without deciding that Defendant sufficiently preserved the claim of error he now advances on appeal. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (observing that the first step of fundamental error is the reversible error standard).

362 P.3d 174. To answer this question, we review Section 30-22-8.1, the statute defining the crime, to effectuate the Legislature's intent regarding the crime's elements. *See State v. Swick*, 2012-NMSC-018, ¶ 56, 279 P.3d 747. To that end, "[w]e begin with the plain language of the statute, which is the primary indicator of legislative intent." *State v. Suazo*, 2017-NMSC-011, ¶ 16, 390 P.3d 674 (alteration, internal quotation marks, and citation omitted). "Under the plain meaning rule, when a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125.

**{8}**     Section 30-22-8.1 provides in relevant part:

> Escape from a community custody release program consists of a person, excluding a person on probation or parole, who has been lawfully committed to a judicially approved community custody release program, including a day reporting program, an electronic monitoring program, a day detention program or a community tracking program, escaping or attempting to escape from the community custody release program.

Section 30-22-8.1(A). Defendant acknowledges that the word "willful," or any variation of that concept, does not appear in Section 30-22-8.1(A). He does not contend that the statutory text is ambiguous; nor do we perceive any ambiguity. The plain language of Section 30-22-8.1(A) indicates the Legislature did not intend to include willfulness as an element of escape from a community custody release program. We thus must give effect to this clear and unambiguous meaning unless there is some basis to depart from it. *See State v. Bennett*, 2003-NMCA-147, ¶ 6, 134 N.M. 705, 82 P.3d 72 ("If the meaning of the statutory language is clear and without ambiguity, we apply the statute as it is written.").

**{9}**     Defendant has advanced no reasoned basis to depart from the plain language of Section 30-22-8.1(A). Instead, Defendant asserts only that where, as in his case, escape involves the failure to comply with the terms and conditions of the community custody release program, "[w]illfulness [is] an inherent and essential element of such an allegation." Defendant's argument essentially ends there. It lacks analysis and citation to supportive authority,[4] and we therefore decline to consider it further. *See State v. Candelaria*, 2019-NMCA-032, ¶ 48, 446 P.3d 1205 (declining to review an undeveloped claim because "we will not review unclear arguments, or guess at what a party's arguments might be" (alterations, internal quotation marks, and citation omitted)); *State*

---

[4]Defendant cites a single case, *In re Bruno R.*, 2003-NMCA-057, 133 N.M. 566, 66 P.3d 339, in support of this argument. *Bruno R.* involved the revocation of a child's probation due to his alleged violation of the conditions of that probation. *Id.* ¶ 1. The issue on appeal was whether there was sufficient evidence of the child's willfulness to support the revocation. *Id.* ¶¶ 10-12. There was no discussion in *Bruno R.* about when, or under what circumstances, willfulness should be considered an essential element of an offense. *See id.* ¶¶ 10-14. And Defendant provides no reasoned argument why *Bruno R.* compels the conclusion that willfulness is an essential element of escape from a community custody release program; nor will we guess at what his argument might be. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (providing that an appellate court will not guess at what a party's argument might be).

*v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("We will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists.").

**{10}** We are otherwise satisfied, based on well-established canons of statutory construction, that willfulness is not an essential element of escape from a community custody release program. To accept Defendant's position, we would have to read "willful" into Section 30-22-8.1(A). This we will not do. *See State v. Elliott*, 2001-NMCA-108, ¶ 14, 131 N.M. 390, 37 P.3d 107 ("We do not read words into the statutes, particularly when the [L]egislature has seen fit not to include them."); *see also id.* (providing that "[i]t is the role of the [L]egislature to define crimes"). The Legislature was well aware of how to include a willfulness element when defining a criminal offense, as evidenced by its inclusion of such language in similar criminal statutes. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)). For example, when defining the offense of escape from an inmate-release program, the Legislature included the requirement that a defendant "*willfully* fail[] to return to the designated place of confinement within the time prescribed." NMSA 1978, § 33-2-46 (1980) (emphasis added); *see also State v. Rosaire*, 1997-NMSC-034, ¶¶ 5, 7, 123 N.M. 701, 945 P.2d 66 (concluding, based on the statutory text of Section 33-2-46, that willfulness is an essential element of escape from an inmate-release program). As noted, no such similar language exists in Section 30-22-8.1(A), and so we must presume the Legislature intentionally omitted it. *Cf. State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional.").

**{11}** We thus agree with the State that the Legislature's omission of willfulness in Section 30-22-8.1(A) evinces its intent not to include such an element in the offense of escape from a community custody release program.[5] The district court's denial of Defendant's request to include willfulness as an element in the jury instruction defining the charged offense was therefore not erroneous.

## II. Duress as an Affirmative Defense to Escape From a Community Custody Release Program

**{12}** We next address Defendant's claim that he was entitled to a duress instruction as an affirmative defense to escape from a community custody release program. *See State v. Osborne*, 1991-NMSC-032, ¶ 30, 111 N.M. 654, 808 P.2d 624 (describing duress as an affirmative defense). Defendant contends his trial counsel's failure to

---

[5]Our Supreme Court reached the same conclusion through its adoption of the uniform jury instruction for escape from a community custody release program, UJI 14-2228C, after Defendant's trial. *See State v. Johnson*, 2001-NMSC-001, ¶ 15, 130 N.M. 6, 15 P.3d 1233 ("There is a presumption that the instructions adopted by [our Supreme] Court from proposals by standing committees of the Court are correct statements of law." (alterations, internal quotation marks, and citation omitted)). "Willfulness," or any variation of the same, is notably absent from UJI 14-2228C.

request such an instruction amounted to ineffective assistance of counsel or, alternatively, the district court's failure to sua sponte instruct on duress amounted to fundamental error.[6] Because we conclude that Defendant was not entitled to a duress instruction, these arguments fail. *See State v. Hilliard*, 1988-NMCA-066, ¶ 8, 107 N.M. 506, 760 P.2d 799 (concluding that where a defendant was not entitled to an instruction, trial counsel's failure to request such an instruction was not ineffective); *State v. Adamo*, 2018-NMCA-013, ¶ 27, 409 P.3d 1002 (concluding that where there was no error in the jury instructions, there was no fundamental error).

**{13}** "[D]uress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill." *Esquibel v. State*, 1978-NMSC-024, ¶ 8, 91 N.M. 498, 576 P.2d 1129, *overruled on other grounds by State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175. "Duress does not negate the mental state or volitional act, but instead justifies the intended criminal act." *State v. Gurule*, 2011-NMCA-042, ¶ 16, 149 N.M. 599, 252 P.3d 823 (alterations, internal quotation marks, and citation omitted). That is, "[a] defendant pleading duress is not attempting to disprove a requisite mental state and is, instead, attempting excusal from criminal liability because of the circumstances surrounding their intentional act." *Id.* (emphasis, internal quotation marks, and citation omitted); *see also State v. Ortiz*, 2020-NMSC-008, ¶ 14, 468 P.3d 833 ("If duress is successfully asserted, the crime perpetrated is excused as a blameless act."). Generally, to assert duress as a defense to a criminal charge, the accused must make a prima facie showing that they "feared immediate great bodily harm to [themselves] or another person if [they] did not commit the crime charged and if a reasonable person would have acted the same way under the circumstances." *Esquibel*, 1978-NMSC-024, ¶ 3; *see also State v. Castrillo*, 1991-NMSC-096, ¶ 5, 112 N.M. 766, 819 P.2d 1324 ("[The d]efendant bore the burden to present a prima facie case of duress warranting [the duress instruction's] submission to the jury.").

**{14}** Defendant claims he was entitled to a duress instruction "because he feared for his safety" when Mr. Johnson resorted to violence. The State advances two arguments why Defendant was not entitled to a duress instruction. First, the State contends that, at

---

6Defendant did not request a duress instruction at trial, so any claim of instructional error is not preserved and will be reviewed for fundamental error if at all. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); Rule 12-321(B)(2) (providing that a party may raise a claim of fundamental error for the first time on appeal); *State v. Traeger*, 2001-NMSC-022, ¶ 1, 130 N.M. 618, 29 P.3d 518 (applying the fundamental error standard to an unpreserved claim of jury instruction error). Defendant asserts generally that the district court's failure to sua sponte instruct the jury on this affirmative defense violated its obligation to instruct on "all questions of law essential for a conviction," Rule 5-608(A) NMRA, and amounted to fundamental error. We question these assertions, which have been categorically rejected by this Court in the past. *See State v. Savage*, 1992-NMCA-126, ¶ 11, 115 N.M. 250, 849 P.2d 1073 (providing that Rule 5-608(A) does not mandate the district court to instruct on an unrequested affirmative defense that is not an essential element of the offense); *State v. Martinez*, 1996-NMCA-109, ¶ 38, 927 P.2d 31, 122 N.M. 476 (rejecting the defendant's claim of fundamental error where the unrequested affirmative defense was not an essential element of the offense). Regardless, Defendant's claims fail on the merits because, as we discuss, Defendant was not entitled to a duress instruction. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 ("The first step in reviewing for fundamental error is to determine whether an error occurred.").

the time Defendant left the Johnson residence, there was no evidence to "support a claim that he was in fear of immediate and great bodily harm" because Defendant had the upper hand in the altercation with Mr. Johnson. Second, the State argues that escape is a continuing offense; consequently, because Defendant remained voluntarily at large after any duress subsided, Defendant was not entitled to a duress instruction. We find the State's second argument dispositive and limit our analysis accordingly.

**{15}** In support of its argument that escape from a community custody release program is a continuing offense, the State cites *State v. Martinez*, 1989-NMCA-047, 109 N.M. 34, 781 P.2d 306. *Martinez* held that escape from the penitentiary, NMSA 1978, § 30-22-9 (1963), is a continuing offense such that "an escapee continues to commit the offense as long as [they] voluntarily remain[] at large." *Martinez*, 1989-NMCA-047, ¶ 8. Because escape is a continuing offense, "the defendant will lose his defense of duress if he fails to terminate his conduct as soon as the claimed duress had lost its coercive force." 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.7(b) (3d ed. 2022) (omission, internal quotation marks, and citation omitted). Thus, to be entitled to a duress instruction, a defendant charged with escape from the penitentiary must make an additional showing beyond the requisite fear of immediate great bodily harm at the time of the initial escape. *See Martinez*, 1989-NMCA-047, ¶ 16; *see also Wells v. State*, 687 P.2d 346, 350 (Alaska Ct. App. 1984) ("A defendant relying on necessity to justify an escape must present some evidence justifying [their] continued absence from custody as well as [their] initial departure."), *cited approvingly in Martinez*, 1989-NMCA-047, ¶ 13. A defendant must show that they reported "immediately to the proper authorities when [they] attain[ed] a position of safety from the immediate threat." *Martinez*, 1989-NMCA-047, ¶ 16 (internal quotation marks and citation omitted); *see also* UJI 14-5132(4) NMRA (requiring that an escapee asserting a duress defense must show that they intended to report or did report "immediately to the proper authorities when [they] attained a position of safety from the immediate threat"). Stated differently, if a defendant never reported (or attempted to report) to authorities, they must show that the claimed duress continued to have coercive force during the entirety of their period of escape. *See* UJI 14-5132(4); *Martinez*, 1989-NMCA-047, ¶ 16; 2 LaFave, *supra*, § 9.7(b).

**{16}** The State argues *Martinez*'s determination that escape from the penitentiary is a continuing offense compels the conclusion that escape from a community custody release program is also a continuing offense.[7] Further, the State submits, because there is no evidence that any claimed duress continued during the entire thirty-four-day period

---

[7]Defendant does not address in his brief in chief whether escape from a community custody release program is a continuing offense; and, in the face of the State's argument on this point, Defendant advances no counter-argument, nor does he otherwise dispute that the charged offense is a continuing one. Although Defendant's silence may be treated as a concession that escape from a community custody release program is a continuing offense, we independently assess whether this is the case. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (providing that when a reply brief does not address arguments made in an answer brief, "a failure to respond constitutes a concession on the matter"); *State v. Muller*, 2022-NMCA-024, ¶ 18, 508 P.3d 960 (providing that we are not bound by a party's concession and the Court remains "duty-bound to independently ascertain the legislatively intended meaning of the statute at issue in this case").

of Defendant's escape, he was not entitled to a duress instruction. We agree with the State on both points, which we take up in turn.

## A. Escape From a Community Custody Release Program Is a Continuing Offense

**{17}** To determine whether a crime is a continuing offense, we look to the statutory text and the nature of the offense. *See Martinez*, 1989-NMCA-047, ¶ 8 ("To answer the question of whether the offense of escape is a continuing offense, we examine the nature and elements of the offense of escape."); *Toussie v. United States*, 397 U.S. 112, 115 (1970) (providing that a particular offense may be deemed a continuing one if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one"). Because this determination involves the interpretation of a penal statute, we also "must consider the objectives and purposes sought to be accomplished by the [L]egislature and give effect to the legislative intent." *Martinez*, 1989-NMCA-047, ¶ 12. Our review is de novo. *See Farish*, 2021-NMSC-030, ¶ 11.

**{18}** We turn first to the statutory text at issue in this case, which is, in relevant part, indistinguishable from the text at issue in *Martinez*. "Escape from a community custody release program consists of a person . . . who has been lawfully committed to a judicially approved community custody release program . . . *escaping or attempting to escape from the community custody release program*." Section 30-22-8.1(A) (emphasis added). Similarly, "[e]scape from penitentiary consists of any person who shall have been lawfully committed to the state penitentiary . . . *escaping or attempting to escape from such penitentiary*." Section 30-22-9 (emphasis added). In construing the meaning of "escape" in Section 30-22-9, this Court concluded, "The crime of escape does not end at the prison door, nor at a point in time when a prisoner successfully eludes immediate pursuit or reaches temporary sanctuary." *Martinez*, 1989-NMCA-047, ¶ 10. That is, "escape" extends beyond the initial flight and continues "so long as [the escapee] voluntarily remains at large." *Id.* ¶ 8. We see no reason to give the term "escape" in Section 30-22-8.1 a meaning different from that given in Section 30-22-9. *See Jade G.*, 2007-NMSC-010, ¶ 28 (providing that it is a "normal rule of statutory construction to interpret identical words used in different parts of the same act as having the same meaning" (alteration, internal quotation marks, and citation omitted)).

**{19}** Next, the nature of the crime of escape—whether from the penitentiary or from a community custody release program—supports a determination that such an offense is a continuing one. In examining the nature of the crime of escape, *Martinez* cited, among other authorities, *Wells*, 687 P.2d 346, an Alaska Court of Appeals case, and *United States v. Bailey*, 444 U.S. 394 (1980), a United States Supreme Court case. *See Martinez*, 1989-NMCA-047, ¶¶ 13, 15. In concluding that escape was a continuing offense, the Alaska Court of Appeals noted that "a major risk generated by an escape is [the] potential harm caused by the escapee while at large." *Wells*, 687 P.2d at 350. Similarly, the United States Supreme Court wrote that it was beyond doubt that escape

from federal custody was a continuing offense, explaining: "Given the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Bailey*, 444 U.S. at 413 (quoting *Toussie*, 397 U.S. at 115). The risks of harm associated with an escapee remaining at large—whether they escape from the penitentiary or a community custody release program—are similar because a community custody release program provides an alternative to the traditional confinement of a jail, prison, or other correctional facility. *Cf. State v. Hansen*, 2021-NMCA-048, ¶ 20, 495 P.3d 1173 (examining when a defendant released to a community custody release program is entitled to presentence confinement credit); *State v. Duhon*, 2005-NMCA-120, ¶ 12, 138 N.M. 466, 122 P.3d 50 ("The societal interest in obtaining criminal defendants' compliance with custodial restrictions applies to formalized systems and ad hoc procedures equally."). And the legislative purpose of Sections 30-22-8.1 and 30-22-9 is the same: deterring escape from lawful confinement and incentivizing compliance. *See Martinez*, 1989-NMCA-047, ¶ 17 (providing that "the clear legislative purpose" of Section 30-22-9 is "deterring escape"); *Duhon*, 2005-NMCA-120, ¶ 12 (equating the legislative purposes of Sections 30-22-8.1 and 30-22-9 and providing that they are designed to ensure compliance).

{20}   In sum, the considerations in *Martinez* that led this Court to conclude that escape from the penitentiary is a continuing offense support the conclusion here that escape from a community custody release program likewise is a continuing offense. We thus see no reason not to extend the logic in *Martinez* to this case, particularly in the absence of any argument from Defendant. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. Accordingly, we conclude that escape from a community custody release program is a continuing offense that continues until an escapee is apprehended or surrenders. *See Martinez*, 1989-NMCA-047, ¶ 17.

## B.   Defendant Was Not Entitled to a Duress Instruction for the Continuing Offense of Escape From a Community Custody Release Program

{21}   In view of the offense being continuing, we turn now to whether Defendant was entitled to a duress instruction—a matter we review de novo. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (providing that whether a defendant is entitled to an instruction on their theory of the case is a mixed question of law and fact reviewed de novo). Since Defendant does not contend he reported or intended to report to the proper authorities, Defendant must show that the claimed duress continued to have coercive effect during his period of escape to be entitled to a duress instruction. *See* UJI 14-5132(4);[8] *Martinez*, 1989-NMCA-047, ¶¶ 14, 16; *see also Bailey*, 444 U.S.

8In light of our conclusion that escape from a community custody release program is a continuing offense, we observe that UJI 14-5130 NMRA (the general duress instruction for nonhomicide crimes) does not provide an accurate rendition of the duress defense for this offense. The duress instruction for escape from jail or the penitentiary, *see* UJI 14-5132, incorporates the fact that escape is a continuing offense. *See* UJI 14-5132(4) ("The defendant [intended to report] [reported] immediately to the proper authorities when [he] [she] attained a position of safety from the immediate threat." (use note omitted)); *Martinez*, 1989-NMCA-047, ¶ 16 (discussing UJI 14-5132). We thus conclude that UJI 14-5132, or a version modified to the particular facts and circumstances of a given case, more accurately portrays the

at 412-13 (concluding that "in order to be entitled to an instruction on duress or necessity as a defense to the crime charged, an escapee must first offer evidence justifying his continued absence from custody as well as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force" (footnote omitted)); *Wells*, 687 P.2d at 351 (rejecting the defendant's claim that he was entitled to a duress defense because there was no evidence supporting "that [the defendant's] continued absence resulted from duress, or otherwise justifying [the defendant's] continuing absence").

**{22}** Defendant acknowledges this general principle, but claims he was nevertheless entitled to a duress instruction because "[t]here was evidence from which the jury could have inferred continuing duress." Specifically, Defendant contends "there was simply no indication that Mr. Johnson would somehow welcome back the man who had slept with his wife." We are not persuaded. Even if returning to the Johnson residence were the only way of terminating Defendant's escape, which we seriously doubt, Defendant fails to explain how the altercation with Mr. Johnson, which he described as "a sudden quarrel or the heat of passion," continued to have coercive effect throughout the thirty-four-day period of his escape. *See Candelaria*, 2019-NMCA-032, ¶ 48. Nor has he cited record evidence in support of his claim of continued duress. *See State v. Cordova*, 2014-NMCA-081, ¶ 14, 331 P.3d 980 ("[A]rgument of counsel is not evidence."). We, consequently, give Defendant's contention that he was subjected to continued duress throughout the period of escape no further consideration.

**{23}** In sum, because Defendant's escape from the community custody release program outlasted any purported duress, he was not entitled to a duress instruction. As a result, trial counsel's failure to request such an instruction was not ineffective. *See State v. Martinez*, 1996-NMCA-109, ¶¶ 29-32, 122 N.M. 476, 927 P.2d 31 (concluding that the defense counsel's failure to request an instruction on an affirmative defense did not render their assistance ineffective because the defendant was not entitled to the instruction); *see also State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel."). Nor could the district court's failure to sua sponte instruct on duress be considered fundamental error. *See State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448 (providing that the first step in our fundamental error analysis is determining whether reversible error occurred); *State v. Cardenas*, 2016-NMCA-042, ¶ 5, 380 P.3d 866 ("[T]he failure to instruct the jury on a defendant's theory of the case is reversible error only if there is evidence to support giving the instruction.").

**CONCLUSION**

**{24}** For the foregoing reasons, we affirm.

---

defense of duress for escape from a community custody release program. *See State v. Wilson*, 1994-NMSC-009, ¶ 4, 116 N.M. 793, 867 P.2d 1175 (providing that this Court is not precluded from considering error in jury instructions if our Supreme Court has not yet passed on the validity of the instructions).

{25} IT IS SO ORDERED.

JENNIFER L. ATTREP, Chief Judge

WE CONCUR:

SHAMMARA H. HENDERSON

JANE B. YOHALEM