John SCHNABEL, Appellant,

v.

STATE of Alaska, Appellee.

No. 7273.

Court of Appeals of Alaska.

May 6, 1983.

James R. Webb, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellant.

Douglas K. Mertz, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

John Schnabel was convicted of operating wheeled equipment in a salmon stream without a permit. AS 16.05.870(b), 16.05.-880. He appeals contending that the trial court (1) improperly instructed the jury and (2) erred in denying his motion for judgment of acquittal. We affirm.

Schnabel owns and operates a gold mine in the vicinity of Haines, Alaska. Summer access to the mine is along Porcupine Road. In the winter an alternate route is used which requires crossing of the Klehini River. Porcupine Road was closed by the state during the winter of 1982 so Schnabel's only access to the mine was a temporary winter bridge over the river. (The bridge was removed on May 10, 1982.) During the spring of 1982, Schnabel became concerned that a rival claimant to the mine would obtain an injunction barring further work during the summer of 1982. He therefore commenced operations hoping to mine as much material as possible. These hopes were frustrated by an equipment breakdown which caused him to lay off his employees. He arranged to bring heavy equipment to the site in order to repair the equipment. It appears that the winter bridge was unsuitable for passage of the

heavy equipment and, consequently, Schnabel determined to ford the river in the vicinity of his mine.

The Klehini River has been designated by the Commissioner of Fish and Game as important for the spawning or migration of anadromous fish. *See* AS 16.05.870(a). The parties are in agreement that AS 16.-05.870 requires someone seeking to ford the Klehini River to notify the Commissioner of Fish and Game or his designee prior to crossing the river. *See* AS 16.05.870(b). They are in substantial disagreement as to what the statute requires following such notice and that disagreement forms the basis of this appeal.

Schnabel testified that on April 16, 1982, he gave notice of his intent to cross the river to Ray Staska, an authorized agent for the Commissioner of the Department of Fish and Game. On April 27, 1982, Mr. Staska responded by letter stating that "[a]ll requests for equipment fords through salmon streams will not be approved during the salmon fry outmigration. Emergency crossing requests may be considered on a Title 16 waiver basis." Schnabel never made an application for an emergency crossing.

During the next two weeks, Schnabel and Staska exchanged telephone calls regarding Schnabel's desire to ford the river. It is undisputed that Staska never gave permission or issued a permit. On May 19, 1982, Schnabel crossed the river with a pickup truck, a caterpillar, a skidder and other trucks, hauling a trailer. He was observed by a wildlife officer and subsequently charged and convicted of violating AS 16.-05.870. Schnabel concedes that his actions warranted conviction if he was required to have a permit or other authorization from the Commissioner prior to crossing the river. He vigorously denies that such authorization or permission was required. In order to understand Schnabel's arguments, it is necessary to briefly chart the history of the statutes under consideration.

The fishing industry has always been of paramount concern to the people of Alaska. This concern is reflected in part by statutes enacted to protect fish spawning areas. Alaska has protected streams utilized by fish for spawning and migration for a substantial period of time. *See, e.g.,* §§ *39–1–1—39–8–2,* ACLA 1949. AS 16.05.870 and AS 16.05.880 were enacted in essentially their present form in 1959. *See* Ch. 94, § 31, art. 1, SLA 1959. Section 31 provided:

*Protection of Fish and Game.* In the event that any person or governmental agency desires to construct any form of hydraulic project or to use any equipment that will use, divert, obstruct, pollute or change the natural flow or bed of any river, lake or stream or that will utilize any of the waters of the State or materials from any river, lake or stream beds, such person or governmental agency shall notify the Commissioner of such intention prior to the commencement of construction, and the Commissioner shall acknowledge receipt of such notice by return mail. If the Commissioner so determines, he shall, in said letter of acknowledgment, require such person or governmental agency or [sic] submit to him full plans and specifications of the proposed construction or work, complete plans and specifications for the proper protection of fish and game in connection therewith, and the approximate date when such construction or work is to commence, and shall require such person or governmental agency to obtain the written approval of the Commissioner as to the sufficiency of such plans or specifications before construction is commenced. If any person or governmental agency commences construction on any such works or projects without first providing plans and specifications subject to the approval of the Commissioner for the proper protection of fish and game in connection therewith and without first having obtained written approval of the Commissioner as to the adequacy of such plans and specifications submitted for the protection of fish and game, he is guilty of a misdemeanor. If any such person or governmental agency be convicted of violating any of the provi-

sions of this section and continues construction on any such work or projects without fully complying with the provisions hereof, such works or projects are hereby declared a public nuisance and shall be subject to abatement as such. The cost of restoring any river, lake or stream to its original condition shall be borne by the violator and shall be in addition to any penalty imposed by the court.

Provided, that in case of an emergency arising from weather or stream flow conditions, the Department, through its authorized representatives, shall issue oral permits to a riparian owner for removing any obstructions or for repairing existing structures without the necessity of submitting prepared plans and specifications.

In 1960 the section was amended to provide:

> In the event that any person or governmental agency desires . . . to use, *except for the purpose of crossing a river or stream at an established crossing,* any wheeled, tracked or excavating equipment or log dragging equipment in the bed of any river, lake or stream containing anadromous fish . . . [he must notify the Commissioner and obtain a permit].

Ch. 180, § 1, SLA 1960. (Emphasis supplied).

In 1962 the section was amended a second time to require the Commissioner to specify, by regulation adopted in conformity with the Administrative Procedure Act, AS 44.-62, waterways important for the spawning or migration of anadromous fish and to limit the applicability of the section to those designated waterways. In addition, the legislature rescinded the exception adopted in 1960 for crossing rivers and streams at established crossings and added the following language to section 31:

> Should a person or governmental agency fail to notify the commissioner of any construction or act that causes material damage to the spawning beds or prevents or interferes with the migration of anadromous fish, or who, by neglect or noncompliance with plans and specifications required and approved by the commissioner, causes material damage to the spawning beds or prevents or interferes with the migration of anadromous fish, such person or governmental agency shall be guilty of a misdemeanor.

Ch. 132, § 1, SLA 1962 (now AS 16.05.895). It does not appear that the section was revised again until the 1966 legislative session. By that time, the amended section had received its current designation as AS 16.05.870(a) and the 1966 session laws reflect that by this time former section 31 had been broken down into subsections. It therefore appears that the division of the section into subsections was undertaken by the legislative council in connection with the adoption of the 1962 revised Alaska statutes, see, e.g., AS 01.05.006, and carried out under the code reviser's authority established in AS 01.05.031 to:

> (9) rearrange sections, combine sections or parts of sections with other sections or parts of sections, divide long sections into two or more sections, and rearrange the order of sections to conform to a logical arrangement of subject matter as may most generally be followed in the Alaska Statutes;

The reviser's power is, however, subject to the caveat that: "The reviser shall edit and revise the laws for consolidation *without changing the meaning of any law*" (AS 01.05.031(b) (emphasis supplied). It is significant that what is now AS 16.05.880 was first broken out and separated from what is now AS 16.05.870 as part of that code revision and consolidation. *See, e.g.,* Ch. 89, § 1, SLA 1966.

Consequently, prior to the 1980 amendment, what is now AS 16.05.880(c) provided:

> The commissioner shall acknowledge receipt of the notice by return *first class* [Air] mail. If the commissioner determines to do so, he shall, in the letter of acknowledgment, require the person or governmental agency to submit to him full plans and specifications of the proposed construction or work, complete plans and specifications for the proper protection of fish and game in connection

with the construction or work, or in connection with the use, and the approximate date the construction, work or use will begin .... [, AND SHALL REQUIRE THE PERSON OR GOVERNMENTAL AGENCY TO OBTAIN WRITTEN APPROVAL FROM HIM AS TO THE SUFFICIENCY OF THE PLANS OR SPECIFICATIONS BEFORE THE PROPOSED CONSTRUCTION OR USE IS BEGUN].

Ch. 84, §§ 1, 2, SLA 1980.

This section was amended in 1980 so that it currently reads:

AS 16.05.870(c). The commissioner shall acknowledge receipt of the notice by return air mail. If the commissioner determines to do so, he shall, in the letter of acknowledgment, require the person or governmental agency to submit to him full plans and specifications of the proposed construction or work, complete plans and specifications for the proper protection of fish and game in connection with the construction or work, or in connection with the use, and the approximate date the construction, work, or use will begin, and shall require the person or governmental agency to obtain written approval from him as to the sufficiency of the plans or specifications before the proposed construction or use is begun.

It is significant to note that what is now AS 16.05.880 has remained essentially the same since first enacted in 1959 and that what is now AS 16.05.870(c) remained essentially the same since enactment in 1959 until changed by the 1980 legislature.

Having reviewed the history of the section, we are now able to consider Schnabel's arguments. Briefly, he contends that the statute contemplates a notice to the commissioner prior to fording a controlled stream. The Commissioner then has two alternatives: he may expressly or by implication authorize the requested action or he may request full plans and specifications. If he withholds express approval, but fails to request plans and specifications, he must be deemed to have implicitly granted the request even if he verbally objects. If, and

only if, he requests full plans and specifications and finds them inadequate for purposes of protecting the fish at hazard, may he deny the request. At this point, the respondent is entitled to his remedies under the Administrative Procedure Act. Under this interpretation, Schnabel vigorously argues that a rejection of a request to ford that is not proceeded by a request for full plans and specifications is a nullity that can be disregarded at will. Since it is undisputed that the Commissioner never requested full plans and specifications regarding Schnabel's proposed ford of the Klehini River, Schnabel contends it necessarily follows that a condition prerequisite to criminal responsibility never arose and he was entitled to a judgment of acquittal. Alternatively, if reasonable men and women could differ regarding whether the various written and oral communications between Schnabel and Staska constituted an administrative request for "full plans and specifications," Schnabel was entitled to have the jury instructed that a finding that such a request had been made and disregarded was a prerequisite to criminal responsibility. On this theory, he contends, since the jury was not so instructed, he is entitled to a new trial.

■ The state argues that Schnabel has misread the statutes and placed an artificial construction on the phrase "plans and specifications" in AS 16.05.880 and the complementary term "full plans and specifications" in AS 16.05.870(c). Under the state's construction of the statutes, a person seeking to ford a controlled river or stream must first give notice to the Commissioner and include in his notice sufficient "plans and specifications" so that the Commissioner will know what he intends to do, when he intends to do it, what risk he foresees from his activities to fish in the vicinity, and what steps he intends to undertake for their protection. Such notice, including attached plans and specifications, may be very informal and concise. The commissioner will then review the notification and determine whether he has sufficient information to act upon it. If he does, he can either grant

the request or, subject to the standard established in AS 16.05.870(c), reject the application. If, on the other hand, he has insufficient information to act, he can request "full" plans and specifications requiring the actor to go into greater detail and answer specific questions. In such a case, the Commissioner can reserve judgment on the request until the full plans and specifications are provided. In either event, whether the request is denied based only on the notification and attached documents or denied after full plans and specifications are furnished, the party requesting the right to ford the stream is entitled to administrative remedies under the Administrative Procedure Act. AS 16.05.870.

We agree with the state's analysis of the statutes. We note that the phrase "plans and specifications" has never been defined in the statute. Nevertheless, except for the brief period between 1960 and 1962, a person seeking to ford a controlled stream, even though he utilizes "an established crossing" has always been required to give notice, file "plans and specifications" and have them approved. AS 16.05.880. Further, the provision authorizing the Commissioner to request "full plans and specifications" in his discretion after receipt of notice has always been a part of the statute. It is clear from a review of ch. 84, §§ 1 and 2 SLA 1980, that the legislature did not intend to change the procedure. Rather, it established an explicit standard governing the Commissioner's grant or denial of a request that was previously implicit in the statute and, secondly, made the Commissioner's decision subject to the administrative adjudication provisions of the Administrative Procedure Act.

The record establishes that the Commissioner did not deny Schnabel's request because the "plans and specifications" encompassed in his notice of a request to ford the stream were insufficient to enable the Commissioner to understand what Schnabel intended to do and when he intended to do it. The Commissioner denied the request (subject to further application by Schnabel in the "event of an emergency") because

the Commissioner determined that any crossing by Schnabel at the time and place in question would have been injurious to fish and game regardless of precautions taken. If Schnabel disagreed with this determination, he was entitled to contest it in an administrative adjudication pursuant to AS 44.62.330–.630. He could also have followed the suggestion in Staska's letter and requested an emergency exemption. The reasonableness of the Commissioner's action is not in issue before us. *Anchorage v. Brown,* 626 P.2d 116, 117 (Alaska App.1981) (defendant may not waive administrative appeal and then collaterally attack administrative decision in criminal proceeding).

In conclusion, for purposes of this case, the elements which the state had to prove in order to convict Schnabel were: (1) that Schnabel crossed the Klehini River on May 19, 1982, with heavy equipment; (2) that the Klehini River was a designated salmon stream, AS 16.05.870; and (3) that Schnabel did not have a permit authorizing him to cross the river at that time. The jury was properly instructed regarding these elements and there was substantial evidence from which the jury could find beyond reasonable doubt that the state's evidence established each of these elements. Consequently, the trial court did not err in its instructions and in denying Schnabel's motion for judgment of acquittal.

Schnabel argues that the trial court erred in failing to instruct the jury on his defense of necessity. He relies on AS 11.81.320 and *Nelson v. State,* 597 P.2d 977 (Alaska 1979). The statute provides in relevant part:

*Justification: Necessity.* (a) Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when

(1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and

(2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.

The trial court reasoned that the legislature in enacting what is now AS 16.05.-870—.900, specifically addressed the defense of necessity and limited it to a particular fact situation not present in this case. Consequently, the trial court concluded that by providing for necessity under one circumstance and not mentioning other circumstances, the legislature clearly intended to preclude reliance on necessity in other circumstances. *See* AS 11.81.320(2). The trial court relied on present AS 16.05.890 which has been part of the statute since 1959. It provides:

> In an emergency arising from weather or stream flow conditions, the department, through its authorized representatives, shall issue oral permits to a riparian owner for removing obstructions or for repairing existing structures without the necessity of submitting prepared plans and specifications as required by § 870 of this chapter.

Schnabel notes that this section does not directly address the "specific situation involved," *see* AS 11.81.320(1), and, consequently, that this case falls within AS 11.-81.320. It is unnecessary for us to determine whether AS 11.81.320(1) or AS 11.81.-320(2) is entitled to priority here. We reach this conclusion because "necessity" has not been established as a matter of law.

■ Before a person is entitled to an instruction on "necessity" there must be "some evidence" in the record that the action which the person took was necessary, *i.e.,* that he had no other alternative, to avoid an irreparable injury which, under the circumstances, outweighed any injury likely to result from the action taken. The "some evidence test" is explained in *Christie v. State,* 580 P.2d 310, 315 (Alaska 1978). Schnabel had an adequate remedy at law. Consequently, he was not faced with irreparable injury. If Schnabel disagreed with the Commissioner's rejection of his application to cross the stream, the Administrative Procedure Act provides an informal speedy remedy for resolving that disagreement. *See* AS 44.62.330—.630. There is nothing in the record that suggests that Schnabel

could not have obtained a prompt hearing before a hearing officer under the Administrative Procedure Act had he followed its provisions. Such a hearing would have provided a forum for weighing and balancing the loss or damage to Schnabel from not crossing the stream against potential damage to the fish in the stream should he be permitted to cross-the precise determination that is in issue whenever the defense of necessity is raised. *See Nelson v. State,* 597 P.2d 977 (Alaska 1979).

In the unlikely event that administrative adjudication would not provide a sufficiently speedy remedy, Schnabel was protected by AS 44.62.560(e) which provides:

> The superior court may enjoin agency action in excess of constitutional or statutory authority at any stage of an agency proceeding. *If agency action is unlawfully withheld or unreasonably withheld, the superior court may compel the agency to initiate action.*

[Emphasis supplied].

The remedy provided by AS 44.62.560(e) is independent of and in addition to Schnabel's right to judicial review of an adverse administrative adjudication. *See United States v. R.C.A. Alaska Communications, Inc.,* 597 P.2d 489, 508 (Alaska 1979).

There is nothing in the instant record which would support a finding that recourse by Schnabel to either his administrative or judicial remedy would have been insufficient to resolve any "necessity" with which he was faced.

Our disposition of this issue, holding that Schnabel had adequate alternatives in judicial and administrative remedies to the course he took, and as a result failed to satisfy the "some evidence" test as a matter of law, renders it unnecessary for us to determine whether the pecuniary loss anticipated by Schnabel, under the circumstances in which he anticipated suffering it, would qualify as "some evidence" of "necessity" in the absence of adequate administrative and judicial remedies.

The judgment of the district court is AFFIRMED.