**Lynn E. LACEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7883.

Court of Appeals of Alaska.

Sept. 6, 2002.

Kathleen A. Murphy, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kim S. Stone, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Lynn E. Lacey absconded from the Palmer Correctional Center on September 15, 1998, shortly before he was to have been transferred to a private prison in Arizona. Lacey lived as a fugitive for the next thirteen months. Using the alias "Allen Mitchell", he obtained a new driver's license and forged a new life in the Trapper Creek area. He obtained employment, attended church, pur-

chased three vehicles, and was preparing to buy property in a new subdivision when he was arrested in October 1999.

Following Lacey's arrest, he was indicted for second-degree escape.[1] His proposed defense was necessity. Lacey's attorney asserted that, on the day before Lacey absconded, a fellow inmate told Lacey that he would be killed as soon as he was transferred to the Arizona prison—thus prompting Lacey to escape from prison to preserve his life.

Superior Court Judge Eric Smith considered Lacey's offer of proof and concluded that it was deficient in two respects. First, Lacey never informed the prison authorities of the alleged threat and never tried to obtain their help and protection. Judge Smith therefore ruled that Lacey had failed to present a *prima facie* case that he had no reasonable alternative to absconding from prison. Second, escape from prison is a continuing offense. Even assuming that Lacey's initial escape from prison might have been justified, Lacey remained a fugitive for more than a year. During this time, he concededly did not contact the authorities or ask a lawyer (or any other person) to assist him in negotiating with the authorities. Judge Smith therefore ruled that Lacey had failed to present a *prima facie* case that he had no reasonable alternative to remaining a fugitive. For these two reasons, Judge Smith concluded that Lacey was not entitled to present a necessity defense to the jury.

The main question presented in this appeal is whether Lacey's offer of proof was sufficient to establish a *prima facie* case of necessity—whether it constituted the "some evidence" of necessity that is required under AS 11.81.320(b) and AS 11.81.900(b)(2)(A) before a defendant is entitled to a jury instruction on this issue. We agree with Judge Smith's analysis of Lacey's offer of proof, and we therefore uphold his ruling.

Before we discuss this issue, we will address a separate point that Lacey raises in this appeal: Judge Smith's purported failure to grant Lacey's request for a continuance of trial.

*Judge Smith's purported failure to grant a continuance of trial*

■ Just before jury selection was scheduled to begin—and before Judge Smith ruled that Lacey's proposed necessity defense was not available—Lacey's attorney asked Judge Smith to delay the trial so that the defense could track down a witness: the inmate who allegedly had threatened Lacey. Lacey's attorney admitted that they did not know where this man was, but she told Judge Smith that they were trying to locate him through Department of Corrections records.

In response, Judge Smith noted that Lacey's trial was going to be interrupted for a week anyway (because of other matters already scheduled). Thus, even if the court denied the requested continuance, Lacey's attorney would still have two weeks to find her witness before the State rested its case. Judge Smith declared that, given this scheduling situation, "we can sort of have our cake and eat it, too". In other words, jury selection could commence as scheduled, but the defense attorney would effectively receive the benefit of a continuance.

Lacey's attorney did not argue that two weeks was insufficient, nor did she otherwise object to Judge Smith's suggested solution of the witness problem. Her only response was, "So we'd start [jury selection] tomorrow?"

Later, Lacey waived his right to a jury trial and consented to a bench trial. As a result, the State's case ended earlier than anticipated. At this point, Lacey's attorney expressed reluctance to begin her case; she implied that she was not ready to proceed because "we were [not] supposed to [begin] our defense [until] next week". Judge Smith conceded that he "[had] thought [that the State's] case would take longer". He told Lacey's attorney that, "if need be, we will continue [this trial] until a week from Monday, so you can find this [witness] regarding the threat".

However, Judge Smith also noted that the missing witness's testimony was probably not necessary—because the judge had already accepted the defense offer of proof that La-

---

1. AS 11.56.310(a)(1)(A).

cey had been threatened. He told the defense attorney, "[There is no] need [for] you to confirm evidence that you've presented through your offer of proof." (This issue of Lacey's proposed defense of necessity and his accompanying offer of proof is explained more fully later in this opinion.)

Judge Smith offered to recess Lacey's trial for a day so that the defense attorney could confer with Lacey, both about this matter and the related issue of whether Lacey should take the stand. The defense attorney responded, "[T]hat would be a good idea." The next day, when court reconvened, the defense attorney told Judge Smith that she intended to rest her case without presenting any more evidence.

Given this record, we conclude that Lacey failed to preserve his claim of a denied continuance.

■ Moreover, any error would be harmless. Even if this missing witness had been located, and even if he had waived his Fifth Amendment privilege and testified that he had threatened Lacey, this would only corroborate the assertions of fact contained in Lacey's offer of proof. And, as we discuss in the next section, this offer of proof was insufficient to establish a *prima facie* case of necessity.

*The law of necessity as it applies to escapes from prison*

■ Under AS 11.81.320(a), Alaska law recognizes the defense of necessity "to the extent permitted by common law". As used in this statute, the term "common law" refers to "the evolution of [the] law through court decisions".[2] Thus, the definition of the necessity defense "is not limited to the state of the law at any particular time in the past". Rather, the legislature intended "to give the

courts the power to define the specifics of the defense of necessity in Alaska".[3]

■ The necessity defense is premised on the concept that it is sometimes necessary to break the law in order to prevent a worse evil.[4] As defined in our case law, the necessity defense comprises three basic elements: (1) the defendant must have violated the law to prevent a significant evil, (2) there must have been no adequate alternative method to prevent this evil, and (3) the harm caused by the defendant's violation of the law must not have been disproportionate to the foreseeable harm that the defendant was trying to avoid.[5] In *Wells v. State*, 687 P.2d 346 (Alaska App. 1984), we elaborated this definition, explaining how these three basic elements should be interpreted when necessity is raised as a defense to an escape from prison.

■ First, we held that escape is a continuing offense. That is, offenders who abscond from custody continue to commit escape for as long as they remain away from custody.[6] Second, because escape is a continuing offense, we held that "[a] defendant relying on necessity to justify an escape must present some evidence justifying his continued absence from custody as well as his initial departure".[7]

Next, we explained how the second basic element of necessity—the lack of an adequate alternative to breaking the law—should be interpreted in escape cases.

The defendant in *Wells* claimed that his initial escape from prison was justified because prison officials failed to give him adequate medical attention and also neglected his need for psychological counseling.[8] We flatly held that such evidence, even if believed, "was insufficient as a matter of law to raise a necessity defense".[9]

2. *Wells v. State*, 687 P.2d 346, 348 (Alaska App. 1984).

3. *Wells*, 687 P.2d at 349.

4. *See* Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* (1986), § 5.4, Vol. 1, p. 629.

5. *See Cleveland v. Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981).

6. *See Wells*, 687 P.2d at 350.

7. *Id.*

8. *See id.*

9. *Id.* at 351.

■ The *Wells* opinion does not directly explain this legal conclusion, but the holding appears to be based on the interpretation of the necessity defense announced by the California Court of Appeal in *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974). The California court's analysis is quoted in footnote 2 of *Wells*. Under this interpretation of the necessity defense, prisoners relying on necessity to justify an escape from custody must offer evidence that either (1) there was no time to seek a remedy through the prison administration or the courts, or (2) the prisoner had made similar requests or complaints in the past, and these had proved futile.[10]

In *Wells*, the defendant offered no evidence to show that he had sought administrative or judicial remedies for the alleged lack of medical care. Thus, the fact that he may have actually needed better medical care was, as a matter of law, not sufficient to establish a *prima facie* case for a necessity defense.

■ The defendant in *Wells* also offered evidence that he had been threatened by fellow prisoners after he revealed their plan to steal some marijuana.[11] We held that this evidence was likewise insufficient, as a matter of law, to raise the issue of necessity. We reached this conclusion because (1) Wells failed to offer evidence that he had "tried unsuccessfully to obtain protection within the institution" and, additionally, because (2) Wells failed to offer evidence that he "turned himself in after obtaining his freedom" or that he "could justify his continuing absence" from custody.[12]

Employing the rules of law announced in *Wells*, we now analyze Lacey's case.

*Lacey failed to offer sufficient evidence to raise the issue of necessity*

■ Before a defendant is legally entitled to argue the defense of necessity (or any other defense defined in the Alaska criminal code) to the trier of fact, the defendant must present "some evidence" to put the matter at issue.[13] In this context, "some evidence" is a term of art; it means evidence which, if viewed in the light most favorable to the defendant, is sufficient to allow a reasonable juror to find in the defendant's favor on each element of the defense.[14]

As explained above, one of the three basic elements of the necessity defense is that the defendant had no adequate alternative to breaking the law. From the very beginning, Lacey's attorney admitted that Lacey's case was "weak" on this element. The defense attorney conceded that Lacey "could have gone to [prison] counselors about the death threat", but she asserted that Lacey had not done this because he suspected that the counselors would not believe him.

(Lacey had just litigated and lost an administrative appeal of the decision to transfer him to Arizona. Lacey had opposed the transfer for personal reasons unrelated to his safety. Having lost this appeal, Lacey apparently suspected that prison officials would not believe him if, on the day scheduled for his transfer, he told the officials that he had just been threatened with death if he went to Arizona.)

In addition to the issue of whether Lacey availed himself of administrative procedures for seeking help and protection before he absconded from prison, Judge Smith noted that *Wells* requires a defendant to offer evidence to justify his continued absence from custody. When the judge asked Lacey's at-

---

10. *See id.*, 687 P.2d at 347 n. 2. But compare the seemingly contradictory statements in footnotes 3 and 4.

11. *See id.* at 351.

12. *Id.*

13. *See* AS 11.81.900(b)(2)(A) (governing affirmative defenses, *i.e.*, defenses on which the defendant bears the burden of proof) and AS 11.81.900(b)(18)(A) (governing normal defenses).

14. *See Ha v. State*, 892 P.2d 184, 190 (Alaska App.1995) (the evidence must be sufficient to establish each element of the proposed defense); *Paul v. State*, 655 P.2d 772, 775 (Alaska App. 1982) (the evidence, viewed in the light most favorable to the defendant, must be sufficient to warrant a reasonable juror's finding in the defendant's favor on the proposed defense).

torney to state her offer of proof on this issue, she replied:

> *Defense Attorney:* He stayed away because he ... didn't know what else to do. He was always looking for a way to ... deal with the situation. He was trying to get a lawyer. He was trying to find a way to make some money to get a lawyer, to go in with a lawyer and explain what had happened and ask what to do then.... There is some support for everything that Mr. Lacey says.... And we can bring out what little bit there is through cross-examination. Mr. Lacey also is prepared to take the stand and describe his feelings.

After hearing this offer of proof, Judge Smith told the defense attorney that he would proceed under the assumption that Lacey was willing to take the stand and that Lacey's testimony would corroborate every assertion of fact in the offer of proof. Judge Smith also assured the defense attorney that he understood that his role was to assess the offer of proof in the light most favorable to Lacey, and that the credibility of Lacey's explanation was not at issue. Rather, the issue was whether Lacey's offer of proof was sufficient to establish a *prima facie* case of necessity—whether the assertions of fact contained in the offer of proof, if believed and viewed in the light most favorable to Lacey, were sufficient to support a finding in Lacey's favor on each element of the necessity defense.

Judge Smith then ruled that, based on our decision in *Wells,* Lacey's offer of proof was insufficient for two reasons. First, even assuming that Lacey was threatened and that he had good reason to suspect that he would suffer injury or death if he went to Arizona, Lacey was nevertheless obliged to seek the help and protection of prison officials. Judge Smith accepted Lacey's assertion that he believed it would be futile to ask prison officials for help, but the judge ruled that Lacey's subjective belief did not excuse him from pursuing this lawful alternative to escape.

On this point, Judge Smith relied on this Court's decision in *Gerlach v. State,* 699 P.2d

358 (Alaska App.1985). The defendant in *Gerlach* was a non-custodial parent who absconded with her child because of her fear that the child was being mistreated or neglected. Gerlach hid with the child for more than a year before she was found and arrested.[15]

After Gerlach was indicted for custodial interference, she raised the defense of necessity. She contended that she had stolen the child rather than seeking court intervention because she feared that she did not have enough money to adequately finance litigation and because she suspected that the judge assigned to the custody case was prejudiced against her.[16] We held that, as a matter of law, Gerlach's subjective belief about the futility of litigation was insufficient to raise a necessity defense. We stated, "[A] person cannot be permitted to ignore [available remedial] procedures and rely on self-help simply because he or she distrusts lawyers, judges, and social workers." [17]

Judge Smith applied this same rule to Lacey's case. He concluded that even if Lacey was threatened as he asserted in his offer of proof, Lacey was still obliged to pursue the remedial procedures available to him, even if he suspected that prison officials might view his claim with skepticism.

Judge Smith also ruled that Lacey's offer of proof was deficient because, even if Lacey's initial decision to escape was arguably justified, Lacey failed to offer a justification for his ensuing thirteen-month absence from custody. Judge Smith noted that Lacey had not contacted prison authorities or any other government official during these thirteen months to explain his problem and seek a resolution of his situation. The judge further noted that Lacey had not contacted any attorney to help him in approaching the authorities. Although Lacey claimed that he always intended to contact an attorney as soon as he had accumulated sufficient money to retain one, Judge Smith pointed out that Lacey did not need a large amount of money to initiate this process, since most attorneys

---

**15.** *Id.* at 359.

**16.** *Id.* at 359–360.

**17.** *Id.* at 363.

are willing to hold an initial consultation with a prospective client for a nominal fee. In other words, Lacey had not even taken the first step of contacting an attorney to ascertain how much the legal representation would cost.

After outlining these deficiencies in Lacey's offer of proof, Judge Smith clarified that he accepted (for purposes of the offer of proof) Lacey's assertion that he subjectively believed that these approaches would be a waste of time. But based on *Wells* and *Gerlach*, Judge Smith concluded that the question did not turn on Lacey's subjective belief concerning the efficacy of these alternatives. Rather, the question turned on whether these alternatives were legally adequate and reasonably available. Accordingly, Judge Smith ruled that Lacey's offer of proof was insufficient to raise the defense of necessity.

On appeal, Lacey contends that his offer of proof was sufficient to raise the defense. In his brief, Lacey claims that he did in fact present some evidence to justify a reasonable conclusion that it would have been futile for Lacey to seek the help or protection of prison officials as an alternative to running away from prison. Lacey asserts that, prior to the death threat he received on the eve of his transfer to Arizona, he had been harassed several times in prison, and prison officials did not always act to protect him.

But Lacey never presented this assertion to Judge Smith. In his brief to this Court, Lacey cites page 29 of the transcript for his assertion that prison officials had been indifferent to the prior harassment. But this page of the transcript reveals that Lacey's attorney told Judge Smith only the following: "For a period of time, [Lacey had] been harassed and baited and had suffered a lot of that kind of behavior from other inmates, but he was coping with that." In other words, the attorney did not tell Judge Smith that Lacey had asked prison officials to intervene or that prison officials had been indifferent to Lacey's safety or well-being. We must evaluate Judge Smith's ruling based on the offer of proof that Lacey made in the superior court.

Lacey also argues that he subjectively believed that "a conspiracy was afoot"—*i.e.,* that prison officials actively wished to see him harmed and that this was their motivation for sending him to Arizona. But, as we held in *Gerlach*, a defendant's subjective distrust of government officials is not a valid reason for failing to pursue legal avenues of relief. Moreover, even if Lacey had had objective reasons for concluding that prison officials were conspiring to harm him, this would not justify his decision to remain a fugitive for thirteen months without contacting the Alaska State Troopers, the Alaska Department of Law, or some other government official.

Finally, Lacey reiterates his claim that he was trying to save enough money to hire a lawyer to help him negotiate with the authorities. But, as Judge Smith noted, Lacey never took even the first step of contacting a lawyer for an initial consultation (or of contacting the Public Defender Agency, which he could have done for free).

We therefore agree with Judge Smith that Lacey failed to present sufficient evidence to raise a jury issue on two elements of his proposed necessity defense. Lacey failed to offer a legitimate reason for failing to pursue available administrative remedies before absconding from prison, and he failed to offer a legitimate justification for his decision to remain a fugitive for thirteen months.

We emphasize that, had Lacey offered "some evidence" on these two elements—*i.e.,* evidence sufficient to support a finding in Lacey's favor on these elements—then it would have been up to the jury to decide the credibility of that evidence. We affirm Judge Smith's ruling because we agree with him that even if we accept as true all the assertions of fact contained in Lacey's offer of proof, those assertions are not sufficient to support a finding in Lacey's favor on these two elements of the necessity defense.

*Judge Smith did not clearly err when he concluded that Lacey had failed to prove mitigator (d)(3) by clear and convincing evidence*

 Lacey's offense, second-degree

escape, is a class B felony.[18] Because Lacey was a third felony offender, he was subject to a 6–year presumptive term.[19] At sentencing, Lacey contended that his presumptive term should be mitigated under AS 12.55.155(d)(3)—*i.e.*, that his offense "[was] committed ... under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected the defendant's conduct".

The litigation of this issue actually began five months earlier, at Lacey's trial, when Lacey proposed his necessity defense. Even though Judge Smith concluded that Lacey had failed to make a sufficient offer of proof to justify a necessity defense, the judge told Lacey that the assertions of fact contained in his offer of proof were conceivably relevant to mitigating Lacey's sentence—but only if Lacey presented evidence to support these assertions, either at trial or at sentencing.

In fact, after Lacey elected to proceed with a bench trial, Judge Smith invited the defense attorney to use the trial as a vehicle for presenting her witnesses concerning any threats made to Lacey and Lacey's perception of how he should deal with those threats. Judge Smith told the defense attorney that this was a matter of administrative convenience: the judge could mentally separate this evidence from the evidence bearing on Lacey's guilt or innocence, and presentation of this evidence at trial would simplify or shorten the sentencing hearing. Despite this invitation, Lacey chose not to testify at trial and his attorney presented no other witnesses on these issues.

Nor did Lacey take the stand or present other evidence at his sentencing hearing. In fact, when Lacey's attorney presented her argument in favor of the proposed mitigating factor of duress, threat, or compulsion, she did not rely on any purported threat to Lacey's life. Instead, she relied on lesser acts of harassment that Lacey had suffered at the hands of fellow inmates:

> *Defense Attorney:* [E]ven if the court didn't find that Mr. Lacey's life was threatened, there certainly was evidence that he

had been harassed.... [T]here was an incident where Mr. Lacey was squirted in the face with some cleanser [by an inmate named] McNaulty. He [also] was antagonized by a man named Sweeney.... [And] Corrections Officer Bowers said that [Lacey] was harassed—that he didn't think it was anything out of the ordinary, but he did confirm that he was harassed. Also, ... Lynn Davids [testified that] she would be on the telephone with him, and she would hear shouting and catcalls while she was on the telephone.

> So, whether or not that amounted to a defense [to the crime of escape], it certainly did show some degree of duress or coercion.

Judge Smith found that Lacey had failed to prove this mitigator. He declared that he was rejecting the proposed mitigator for the same reason that he rejected Lacey's offer of proof regarding necessity: Lacey had done nothing to pursue available administrative remedies to alleviate the problems he faced in prison.

On appeal, Lacey challenges Judge Smith's rejection of this proposed mitigator. But Lacey's primary argument is that he received a death threat, that this threat motivated his escape, and that therefore his offense was mitigated under AS 12.55.155(d)(3). As explained above, Lacey presented no evidence that he had been subjected to death threats, nor did his attorney rely on this theory when she argued the proposed mitigator at the sentencing hearing.

There was evidence that Lacey was subjected to lesser acts of harassment by his fellow inmates, but the question is whether this lesser harassment mitigated Lacey's culpability for absconding from prison under AS 12.55.155(d)(3). As we noted in *Bynum v. State*, mitigator (d)(3) requires proof of duress, threat, or compulsion "sufficiently extraordinary in nature that it approaches being a defense to the crime".[20] We conclude that Judge Smith did not clearly err when he found that Lacey's evidence did not establish

---

**18.** AS 11.56.310(b).

**19.** AS 12.55.125(d)(2).

**20.** 708 P.2d 1293, 1294 (Alaska App.1985).

mitigator (d)(3) by clear and convincing evidence.[21]

*Conclusion*

The judgement of the superior court is AFFIRMED.

COATS, C.J., dissented.

COATS, Chief Judge, dissenting.

Lacey escaped from prison. He was apprehended in Alaska approximately a year after his escape. Lacey defended on the ground that it was necessary for him to escape from prison because he was about to be transferred to an Arizona prison and had received credible threats that he would be killed as soon as he entered that prison.

A defendant who argues the defense of necessity to justify an escape from prison understandably bears a heavy burden to justify his actions. He must establish that he had no reasonable alternative but to escape. Part of his burden is to establish that he was unable to obtain adequate protection within the institution. Furthermore, a defendant "must present some evidence justifying his continued absence from custody as well as his initial departure." [1]

In my view, Lacey presented some evidence that could justify a jury's finding that Lacey established his necessity defense. In his offer of proof, Lacey represented that the Department of Corrections was going to transfer him from a facility in Alaska to a facility in Arizona. Lacey administratively fought the transfer but lost. Then, someone within the prison told him that he would be killed the moment he entered the Arizona prison. (Lacey's attorney represented that she currently was looking for the person who had threatened Lacey.) The day following the threat, Lacey was told that he was going to be transferred. He thought that the person who threatened him had inside information because he had threatened him the day before Lacey was going to be transferred.

Lacey was aware that another person had been beaten into a coma at the Arizona facility. He was sure that the threat was credible, and he was afraid for his life. He explained that he felt that it would be futile to seek help from Department of Corrections officials because he was sure that they would assume that he was merely trying to avoid the transfer. He concluded that his only possible course of action was to escape.

Lacey explained his prolonged absence from the institution. He explained that he was sure that if he turned himself in, he would be transferred to Arizona and killed. He explained that he believed that his only chance was to hire a lawyer before he turned himself in. He claimed that his intention was always to turn himself in but only after he had obtained a lawyer who could protect his rights. He claimed that, at the time he was arrested, he had saved $600 towards the expense of hiring a lawyer. It was always his intent to turn himself in when he had a chance to deal with the threat against his life.

In my view, Lacey's offer of proof meets all of the *Wells* criteria. He had an explanation for each prong of the defense. Of course, Lacey's defense to his escape charge was weak. But, in my view, he had the right to present this defense to a jury. Lacey was entitled to a jury trial. I see no reason to deprive him of his right to a jury trial merely because he had a weak defense. I would therefore reverse Lacey's conviction and remand to allow him to present his case to a jury.

---

21. *See Lepley v. State,* 807 P.2d 1095, 1099 n. 1 (Alaska App.1991) (a sentencing judge's findings as to the existence of aggravating and mitigating factors are reviewed under the "clearly erroneous" standard).

1. *Wells v. State,* 687 P.2d 346, 350–51 (Alaska App.1984).